UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VERSAILLES SUR LA MER
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.                                          Case No: 6:18-cv-1125-Orl-37TBS

LEXINGTON INSURANCE COMPANY,

    Defendant.

## REPORT AND RECOMMENDATION

This case came on for consideration of Plaintiff's Amended Motion to Stay Action and Compel Appraisal (Doc. 17). Defendant has filed a memorandum in opposition to the motion (Doc. 19) and the matter has been referred to me. Upon review of the facts and the law, I respectfully recommend that the motion be denied.

### Background

This is an insurance dispute over property damage to a condominium (the "Property"). Defendant, Lexington Insurance Company issued first-party property insurance to Plaintiff, Versailles Sur La Mer Condominium Association, Inc., for the April 4, 2017 to April 4, 2018 policy period (the "Policy"). On September 10, 2017, Hurricane Irma struck and damaged the Property (Doc. 2, ¶ 2).

On September 15, 2017, Versailles submitted a claim to Lexington based on damage to the Property "caused by wind" and, by letter dated October 24, 2017, Lexington determined that coverage applied and made a partial payment (Doc. 17 at 2 and 4; Doc. 1-7). Lexington does not dispute that it paid $200,000 on this claim (Doc. 19 at 2). However, Lexington maintains that, on November 10, 2017, Versailles notified it "of

an entirely new claim" (Doc. 19 at 2). This "new" claim is for the full $10 million policy limits, based upon Versailles' assertion that Hurricane Irma had "racked" the Property (Id.). Versailles disclosed an October 18, 2017 report prepared by Advanced Engineering Contracting and Inspections ("AECI"), to support the "racking" claim (Doc. 19 at 2). Lexington retained experts to investigate this claim and concluded that the structural defects claimed to be "racking" are preexisting long-term conditions at the Property unrelated to the hurricane, and thus, excluded from coverage under the Policy (Id. at 2-3).

Versailles filed a civil remedy notice with the Florida Department of Financial Services on November 10, 2017 (Doc. 19 at 3) and filed suit in state court for breach of contract on January 17, 2018 (Doc. 2). Lexington removed the case here (Doc. 1) and filed its answer and affirmative defenses on March 2, 2018 (Doc. 6). A Case Management and Scheduling Order was entered, and the parties began discovery. On May 25, 2018 or May 29, 2018,[1] Versailles requested a written appraisal of the loss pursuant to the terms of the Policy. On June 4, 2018, Lexington responded that the request for appraisal was untimely and inappropriate because of the dispute regarding coverage (Doc. 17, ¶¶ 8, 9 and Doc. 19 at 3). Versailles' pending motion asks the Court to compel an appraisal and for a stay of these proceedings.

## Discussion

Under Florida law,[2] "[a] challenge of Coverage is exclusively a Judicial question and may not be decided by arbitration." Midwest Mut. Ins. Co. v. Santiesteban, 287 So. 2d 665, 667 (Fla. 1973). Thus, a dispute regarding a policy's coverage is a question for

---

[1] The Parties differ as to the exact day. Compare Doc. 17, ¶ 7 and Doc. 19 at 3.

[2] Under the doctrine set forth in Erie Railroad v. Tompkins, 303 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), "federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996).

the Court. J.P.F.D. Inv. Corp. v. United Specialty Ins. Co., No. 6:17-CV-1415-ORL40GJK, 2017 WL 4685254, at *2 (M.D. Fla. Sept. 29, 2017), report and recommendation adopted, 2017 WL 4657721 (M.D. Fla. Oct. 17, 2017), citing Gonzalez v. Am. Sec. Ins. Co., No: 8:15-cv-1515-36EAJ, 2015 WL 12852303, at * 4 (M.D. Fla. Nov. 10, 2015) (citations omitted). But, when an insurer acknowledges a covered loss, any dispute regarding the amount of the loss is appropriate for appraisal. Id. The Florida Supreme Court has explained:

> [C]ausation is a coverage question for the court when an insurer **wholly** denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed.

Johnson v. Nationwide Mut. Ins. Co., 828 So. 2d 1021, 1022 (Fla. 2002) (emphasis added).

Whether the parties can be compelled to appraisal depends on the provisions of the Policy. J&E Investments, LLC v. Scottsdale Ins. Co., No. 16-61688-CIV-DIMITROULEAS/Snow, 2016 WL 8793337, at * 2 (S.D. Fla. Aug. 18, 2016). The Policy contains an appraisal clause which both sides agree applies when there is a dispute as to the amount of the loss:

> If we and you:
>
> * * *
>
> B. Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(Doc. 17-1 at 30).

Versailles seeks to invoke this provision and compel appraisal, contending that the current dispute involves solely the amount of the loss, which is an issue for the appraisers. Lexington argues that the instant claim presents a dispute over whether there is coverage, which is an issue for the Court. And, even is the appraisal provision applied, Lexington argues that Versailles waived it by failing to invoke appraisal in a timely fashion.

*The appraisal provision applies*

Versailles points to the partial payment following the initial September claim of loss as proof that coverage for its hurricane damage claim has been accepted and the only issue remaining is the amount and extent of the loss. Lexington counters that all coverage issues should be resolved by the Court before any remaining damage issues are referred to appraisal, citing several federal cases where, under allegedly similar facts, appraisal was denied. See Hartford Cas. Ins. Co. v. 600 La Peninsula Condo. Ass'n, Inc., No. 209-CV-501-FTM-29SPC, 2010 WL 555686 (M.D. Fla. Feb. 10, 2010); 767 Bldg., LLC v. Allstate Ins. Co., No. 10-60007-CIV, 2010 WL 1796564, at *2 (S.D. Fla. May 4, 2010); and La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp., 733 F. Supp. 2d 1332, 1334 (S.D. Fla. 2010). After close review of these cases, I cannot conclude that they are, in fact, similar.

In Hartford, two and a half years after a claim was adjusted and paid, the condominium association submitted a "new" estimate and demanded appraisal on this "second" claim. 2010 WL 555686, at *1. In 767 Bldg., losses were reported in 2006, adjusted and paid and, in January 2008, the property owners asked Allstate to reopen the claims to cover upgrades necessary because of building codes. 2010 WL 1796564, at *1.

In La Gorge, the defendant denied payment of a claim submitted in 2005, and the insured submitted a new proof of loss sometime after October 14, 2009. 733 F. Supp. 2d at 1334-35. In all these cases, the insured submitted new claims, years after the first proof of loss was fully adjusted and either paid or coverage rejected. By contrast, Versailles submitted its November claim less than two months after the initial contact and within a month of receiving the October 18, 2017 report from AECI regarding the extent of the claimed damages. Moreover, the language of Lexington's October 24, 2017 letter tendering "partial payment" for the September claim states that the wind damage loss was not fully adjusted at the time of the more detailed November claim (Doc. 1-7). The letter says, in part:

> We are in receipt of and thank you for your executed sworn statement in proof of loss in the amount of $500,000.00 representing a **partial** payment of the loss and damage as a result of Hurricane Irma received in our office on October 24,2017. Please be advised the Lexington Insurance Company must **reject this proof of loss at this time**. The **initial** evaluation of the damages at the insured location by our engaged experts does not suggest loss and claim exceeding $750,000.00, Given the building deductible of $258,147.53; the Lexington Insurance Company is in a position to provide a **partial payment** in the amount of $200,000.00; per the **Partial** Proof of Loss attached.
>
> On September 15,2017 your client reported a claim for hurricane damage with a date of loss of September 10, 2017. Our goal is to **continue to provide your client with a prompt and accurate conclusion to the claim. We will investigate and evaluate the scope of damage and pricing when it is received from your office.**
>
> Lexington Insurance Company's position is based upon the information we have **to date**. **Should you have any other information that you would like for Lexington Insurance Company to consider or that you feel would affect Lexington Insurance Company's coverage investigation and subsequent coverage decision in this matter**, please do not hesitate to send that information directly to me as soon as possible.

(Doc. 1-7 - emphasis added). The highlighted language shows that adjustment of this claim had not been completed and both parties anticipated further investigation and a subsequent final coverage decision as to the appropriate amount of the hurricane damage loss. Seen in this context, the November claim is more accurately viewed not as a separate and unrelated claim, but as a more fully developed explanation of the same claim of damage resulting from Hurricane Irma. Consequently, I do not find that the November claim is, as Lexington argues, "entirely new" and separate from a prior, fully adjusted claim.

Nor are the cited state court cases persuasive. In <u>Citizens Prop. Ins. Corp. v. Demetrescu</u>, 137 So. 3d 500, 501 (Fla. 4th DCA 2014), Citizens "wholly denied" that there was any covered loss. It appears that this was also the case in <u>Citizens Prop. Ins. Corp. v. Michigan Condo. Assn</u>., 46 So. 3d 177, 178 (Fla. 4th DCA 2010). Here, of course, Lexington did not wholly deny the claimed loss.

The facts here are more closely akin to a case neither party cited. In <u>Arvat Corp. v. Scottsdale Ins. Co.</u>, No. 14-22774, 2015 WL 6504587, at *3 (S.D. Fla. Oct. 28, 2015), the insurer paid, as here, a portion of the claim less the policy deductible, and denied coverage for damages its adjusters found were caused by wear and tear and/or deterioration. The Southern District distinguished <u>Citizens</u> and <u>Johnson,</u> in that Scottsdale, unlike those insurers, did not completely deny coverage for the Plaintiff's damages. <u>Id.</u> at *2. The <u>Arvat</u> court explained:

> Defendant acknowledges that a covered peril caused part of the damage to Plaintiff's property. Defendant only disputes the amount of damage caused by the covered peril as opposed to wear, tear, and/or deterioration. Pursuant to the policy, an appraiser can resolve this dispute. The Court may later, if necessary, resolve coverage issues based on the appraiser's findings regarding the amount and causes of the loss.

2015 WL 6504587, at *3. Under the circumstances presented, I cannot agree with Lexington that appraisal is premature because of outstanding coverage issues.

Next, I turn to Lexington's second objection, and conclude that Versailles has waived its right to appraisal at this stage.

*Waiver*

According to the Florida Fourth District Court of Appeal:

> The general definition of "waiver" as "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right" is also applicable to the right of arbitration. Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005) (citing Major League Baseball v. Morsani, 790 So.2d 1071, 1077 n. 12 (Fla.2001)). In this regard, the party claiming waiver need not prove prejudice. Id.; Johnson, 863 So.2d at 428 ("[W]e would adhere to the view that no prejudice is required."). Rather, in determining whether a party waived its right to arbitrate, "[t]he essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." Shochet, 96 So.3d at 1138 (quoting Saldukas, 896 So.2d at 711) (emphasis added).
>
> "A party claiming waiver of arbitration must demonstrate: 1) knowledge of an existing right to arbitrate and 2) active participation in litigation or other acts inconsistent with the right." Inverrary Gardens Condo. I Ass'n, v. Spender, 939 So.2d 1159, 1161 (Fla. 4th DCA 2006) (quoting Breckenridge v. Farber, 640 So.2d 208, 211 (Fla. 4th DCA 1994)). In this regard, this Court, as well as the other district courts, has held that "propounding discovery directed to the merits of pending litigation before moving to compel arbitration results in a waiver of the right to arbitration." McLeod, 15 So.3d at 688; Gordon v. Shield, 41 So.3d 931, 933 (Fla. 4th DCA 2010) ("[T]he active participation in litigation or the propounding of discovery would be circumstances where the right to arbitrate would be deemed waived." (emphasis added)); see also Olson Elec. Co. v. Winter Park Redevelopment Agency, 987 So.2d 178, 179 (Fla. 5th DCA 2008); Estate of Orlanis ex rel. Marks v. Oakwood Terrace Skilled Nursing & Rehab. Ctr., 971 So.2d 811, 812-13 (Fla. 3d DCA 2007).

Ibis Lakes Homeowners Ass'n, Inc. v. Ibis Isle Homeowners Ass'n, Inc., 102 So. 3d 722, 730-731 (Fla. 4th DCA 2012).

Lexington argues that Versailles waived its right to demand appraisal by bringing this coverage action more than five months ago, and actively pursuing the litigation, including by propounding discovery, since then. See Sch. Bd. of Orange County v. Se. Roofing & Sheet Metal, Inc., 489 So. 2d 886, 887 (Fla. 5th DCA 1986) (contractual right to out-of-court dispute resolution waived by actively participating in litigation for 14 months); Florida Ins. Guar. Ass'n, Inc. v. Lustre, 163 So. 3d 624, 629 (Fla. 2d DCA 2015) (actively litigating claim waived the right to seek appraisal). Versailles argues that the mere fact that a lawsuit has been filed does not constitute a waiver of the right to participate in the appraisal process, citing Am. Capital Assur. Corp. v. Courtney Meadows Apartment, L.L.P., 36 So. 3d 704, 707 (Fla. 1st DCA 2010) (appraisal demand was timely as policy of insurance did not contain any provisions limiting the right to invoke appraisal within specific period of time from receiving or waiving sworn proof of loss) and Fla. Ins. Guar. Ass'n v. Castilla, 18 So. 3d 703, 704 (Fla. 4th DCA 2009) (appraisal clause may be invoked for first time after the commencement of a lawsuit). Versailles also says it will waive its entitlement to recover attorney's fees and costs under Florida Statutes §§ 626.9373, 627.428, 57.041, and 92.231 incurred through the appraisal, thus eliminating any prejudice to Lexington.

On review, I find Versailles has waived its right to compel appraisal. Under Florida law, "the question of waiver of appraisal is not solely about the length of time the case is pending or the number of filings the appraisal-seeking party made. Instead, the primary focus is whether [the insureds] acted inconsistently with their appraisal rights." Fla. Ins.

Guar. v. Maroulis, 153 So. 3d 298, 300 (Fla. 5th DCA 2014) (internal citation omitted). Versailles does not claim that it was unaware of its rights to demand appraisal, or that it did not filed this lawsuit and actively litigate the case, including participating in discovery. While I agree that the mere filing of a lawsuit may not immediately waive the right to an appraisal, Versailles' complaint does not assert such a right and it failed to seek an appraisal promptly after the case was filed. This action began in state court in January and the first written demand for appraisal came in late May, *after* an extensive document production where "it became evident that this litigation, and especially the discovery aspect of it, will be lengthy and complex." (Doc. 17 at 5). This leads me to conclude that Versailles has acted in a manner which is inconsistent with its appraisal rights, and therefore, that it has waived appraisal.[3] As there is no basis to compel an appraisal, there is no need for a stay.

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that Plaintiff's Amended Motion to Stay Action and Compel Appraisal (Doc. 17) be **DENIED.**

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual

---

[3] There is a split among Florida courts as to whether prejudice must be shown to establish a waiver of the right to arbitration. See Office Depot, Inc. v. Arnold, No. 16-CV-81650, 2017 WL 4876208, at *2 (S.D. Fla. Aug. 9, 2017), citing Marine Environmental Partners, Inc. v. Johnson, 863 So. 2d 423 (Fla. 4th DCA 2003) (collecting cases). Even assuming that prejudice is required, Versailles' offer to waive any entitlement to recovery of its own fees incurred through appraisal does not account for the legal fees and costs incurred by Lexington that could have "otherwise been avoided had [Versailles] elected appraisal initially." ARI Mut. Ins. Co. v. Hogen, 734 So. 2d 574, 576 (Fla. 3rd DCA 1999). The delay has prejudiced Lexington.

finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on July 24, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record

- 10 -